IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHARLTON REED TIPTON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| PHONSO RAYFORD, CHRISTOPHER | § | SA-21-CV-00493-FB |
| PAULEY, CAPTAIN, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE; RUTH E. TRICE, CAPTAIN | § | |
| OF CORRECTIONAL OFFICERS; | § | |
| LORRAINE SALAS, GRIEVANCE | § | |
| INVESTIGATOR II; ALFRED | § | |
| HASSLER, ALBERT PERALEZ, | § | |
| MANUEL PUENTE, MANUEL | § | |
| OROZCO, OSBALDO PUENTE, | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the following three motions: Defendants

Rayford, Pauley, Trice, Orozco, Peralez, Hassler, and Sala's Motion to Dismiss Pursuant to Fed.

R. Civ. P. 12(b)(1) and (c) [#100]; Defendants Manuel and Osbaldo Puente's Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) [#101]; and Defendants' Motion for Summary

Judgment [#105]. All pretrial matters in this case have been referred to the undersigned for

disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#96]. The

undersigned therefore has authority to enter this recommendation and order pursuant to 28

U.S.C. § 636(b)(1). For the reasons set forth below, the undersigned will dismiss Defendants'

1

motions to dismiss as superseded by Defendants' motion for summary judgment, and recommend the motion for summary judgment be granted.

## I. Background

Plaintiff Charlton Reed Tipton filed this action, proceeding *pro se*, on May 19, 2021, in the Southern District of Texas. The case was transferred to the San Antonio Division of the Western District of Texas on May 24, 2021. After the District Court granted Tipton's motion to proceed *in forma pauperis* and permitted several amendments to the pleadings, the District Court referred this case to the undersigned for pretrial case management. The undersigned thereafter appointed counsel to represent Tipton.

By this action, Tipton, who is currently incarcerated in a Texas Department of Criminal Justice ("TDCJ") facility, alleges he was the victim of the retaliatory use of force in an incident occurring on April 22, 2021, due to his refusal to comply with TDCJ's grooming policy in violation of the First, Fifth, and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1.[1] Tipton's Third Amended Complaint is the live pleading [#60]. This pleading names as Defendants the Senior Warden of the Connally Unit (Phonso Rayford) and various correctional officers personally involved in the use-of-force incident (Christopher Pauley, Alfred Hassler, Albert Peralez, Manuel Puente, Manuel Orozco, and Osbaldo Puente), as well as two other TDCJ employees (Ruth Trice and Lorraine Salas) who allegedly denied him due process and retaliated against him in TDCJ's administrative grievance process. Tipton seeks compensatory damages in the amount of

---

[1] Tipton filed a separate action challenging the constitutionality of the grooming policy at issue and asserting a violation of RLUIPA. *See* SA-21-CV-00060-FB. The District Court dismissed Tipton's constitutional claims for failure to state a claim and his RLUIPA claim for lack of subject matter jurisdiction on mootness grounds due to TDCJ's revision of its grooming policy. The final judgment is currently on appeal before the Fifth Circuit.

$10,000, nominal damages in the amount of $5,000, and punitive damages in the amount of $5,000, against each Defendant, as well as a permanent injunction prohibiting further attempts to compel or coerce Tipton into cutting his hair.

Defendants then filed the motions to dismiss and for judgment on the pleadings pursuant to Federal Rule of Civil Procedures 12(b)(1) and (c) currently before the Court, arguing (1) Tipton's RLUIPA claim is moot due to TDCJ's revision of its grooming policy; (2) Tipton's constitutional claims are barred by the Prison Litigation Reform Act ("PLRA"); (3) Defendants are entitled to qualified immunity; and (4) Tipton has not pleaded the requisite intent to recover punitive damages.  Defendants thereafter filed a motion for summary judgment incorporating all of the arguments raised in the motions to dismiss and reasserting the PLRA and qualified immunity defenses.  The parties have filed various responses and replies to the motions [#102, #103, #108], and the motions are ripe for review.

Because all of Defendants' arguments raised in the motions to dismiss have also been raised in the motion for summary judgment (but on a more complete record), the Court will dismiss the motions to dismiss as superseded by the motion for summary judgment and make a recommendation on the merits of the motion for summary judgment only.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.   Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

### III.  Analysis

The District Court should grant Defendants' motion for summary judgment because Tipton's RLUIPA claim is precluded by the final judgment in his related case and his constitutional claims are barred by the PLRA because he failed to fully exhaust his administrative remedies prior to filing suit and has not established that the statutory exception to the exhaustion requirement applies.

**A.      Tipton's RLUIPA claim is precluded by the final judgment in his related case.**

Tipton's RLUIPA claim alleges that Defendants have imposed a substantial burden on his exercise of religion in the absence of a compelling government interest.  The only relief Tipton may seek from Defendants under RLUIPA is injunctive in nature.  *See Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011).  Tipton seeks a permanent injunction prohibiting the coerced cutting of his hair.  (Third Am. Compl. [#60], at 10–11.)

This RLUIPA claim is the same cause of action Tipton asserted in his related lawsuit, which the Court dismissed on mootness grounds.  Defendants make the same arguments in support of dismissal and/or summary judgment in this case as to Tipton's RLUIPA claim—that the claim is moot due to the revision of TDCJ's grooming policy, which has removed the alleged burden on his free exercise of religion and provided him with the injunctive relief he is seeking. The Court should grant summary judgment to Defendants on Tipton's RLUIPA claim because this Court has already determined that the revision to TDCJ's policy and the fact that Tipton is currently permitted to grow his hair long under that policy together render the claim moot. Tipton is therefore precluded from continuing to litigate this claim.

"A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  The test for claim preclusion (known as *res judicata*) has four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits.  *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010).

A dismissal for lack of subject matter jurisdiction based on mootness is not a decision on the merits. It therefore does not give rise to *res judicata* or true claim preclusion. *See Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980). However, it can give rise to issue preclusion as to a court's jurisdictional determination. *Id.*; *see also* 18A Charles Alan Wright, et al., Fed. Practice & Procedure § 4436 (3d ed. 2022) ("Although a dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion, it does preclude relitigation of the issues determined in ruling on the jurisdiction question . . . .").

Generally, issue and claim preclusion are affirmative defenses that must be pleaded, not raised *sua sponte*. *Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 281 (5th Cir. 2001); *see also* Fed. R. Civ. P. 8(c). Defendants have not pleaded or raised the defense of *res judicata* in this lawsuit, as there was not a final judgment on Tipton's RLUIPA claim in his related suit at the time they filed their dispositive motions. However, there are recognized exceptions to the requirement of pleading the defense, such as where both actions were brought before the same court. *Mowbray*, 274 F.3d at 281. This exception applies here and permits the Court to raise the defense *sua sponte*.

There is now a final judgment dismissing Tipton's identical RLUIPA claim in his related suit based on mootness, which is currently on appeal before the Fifth Circuit. *See* 5:21-CV-00060-FB (Dkt. 101, 102). That the judgment is on appeal does not affect its finality for issue or claim preclusion purposes. *Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co.*, 510 F.2d 272, 273 (5th Cir. 1975) (per curiam). Tipton is therefore precluded from litigating his identical RLUIPA claim in this suit because this Court has already determined it lacks jurisdiction over the claim. The Court should therefore grant Defendants summary judgment on this claim.

6

**B.      Plaintiff's constitutional claims are barred by the PLRA.**

Plaintiff's remaining claims are constitutional claims arising under Section 1983. Defendants argue that Tipton's constitutional claims must be dismissed because he did not fully exhaust his administrative remedies as required by the PLRA before filing suit. The undersigned agrees that Tipton's failure to fully exhaust his administrative remedies prior to seeking redress in federal court bars his Section 1983 claims.

Under the PLRA's amendments to 42 U.S.C. § 1997e, prisoners are required to exhaust administrative remedies before filing suit in federal court:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (2000).  The purpose of this exhaustion requirement is to give an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and to allow for claim resolution in proceedings before an agency because it is faster and more economical than litigation in federal court. *Woodford v. NGO*, 548 U.S. 81, 89 (2006) (internal quotation and citation omitted). The Supreme Court has held that the exhaustion requirement requires "proper exhaustion," meaning that "a prisoner must complete the administrative review process in accordance with the applicable rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. The PLRA makes exhaustion mandatory for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).  Failure to exhaust

administrative remedies is an affirmative defense under the PLRA. *Jones v. Bock*, 549 U.S. 199, 216 (2007). As such, Defendants have the burden of proving the applicability of the defense. *Id.*

The parties agree that the PLRA's exhaustion requirement applies to Tipton's constitutional claims. Tipton's primary factual allegation in this case is that he was the victim of an unconstitutional use of force on April 22, 2021, when TDCJ correctional officers assaulted him and forced him to submit to a haircut at the prison barber. (Third Am. Compl. [#60], at 1– 2.) All of Tipton's claims are "arising out of and surrounding" this incident. (*Id.*) Tipton alleges that Warden Rayford knew that correctional officers had previously threatened to use physical force and had issued disciplinary actions against Tipton to persuade him to cut his hair. (*Id.* at 2.) Tipton further alleges that Lieutenant Pauley, the senior correctional officer involved in the April 22, 2021 incident, directed and ordered others to use force against him to cut his hair and that Pauley personally used excessive force in the hair cutting. (*Id.* at 2–3.) Tipton also claims that others denied him due process in the grievance process and retaliated against him for grieving the officers' disciplinary actions against him related to his refusal to cut his hair both before and after the April 22, 2021 incident. (*Id.* at 3–4.) Because Tipton's allegations challenge an aspect of prison life and particular episodes related to prison discipline and the enforcement of prison policy, he was required to exhaust administrative remedies prior to filing suit. *See Alexander*, 351 F.3d at 630.

The parties also agree that Tipton did not fully exhaust his administrative remedies prior to filing this lawsuit. The PLRA does not explain how specific an administrative grievance must be, but the Fifth Circuit has stated that a grievance should be considered sufficient "to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Additionally, a

grievance must abide by the rules of the particular prison system at issue, here TDCJ.  *Id.*  The Texas prison system has developed a two-step formal grievance process.  *Id.* at 515.  The Step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility.  *Id.*  After an adverse decision at Step 1, the prisoner has ten days to file a Step 2 grievance, which is handled at the state level.  *Id.*  A prisoner must pursue a grievance through both steps for it to be considered exhausted.  *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

The summary judgment record reflects that Tipton filed numerous Step 1 grievances throughout 2021, both before and after the filing of this suit, many of which pertained to TDCJ's grooming policy, alleged threats related to the forced cutting of his hair, alleged sexual harassment related to the style of his hair, disciplinary offenses resulting from his refusal to comply with requests to cut his hair, alleged lack of due process in the grievance process, and the actual April 22, 2021 incident involving the forced cutting of his hair.  (*See* Step 1 Grievances [#105-4], at 87, 107; Step 1 Grievances [#105-5], at 4, 23, 42, 52, 70, 87.)   All of these grievances were denied.  (*See* Investigation Worksheets [#105-4], at 90, 110; Investigation Worksheets [#105-5], at 7, 9, 26, 55, 90.)   Additionally, Tipton was repeatedly excluded from hearings on his disciplinary charges due to his failure to comply with grooming standards and to conduct himself properly.  (*See, e.g.*, Disciplinary Worksheets [#105-5], at 27, 56.)

As to the specific grievances filed challenging the April 22, 2021 incident, the summary judgment record reflects that Lieutenant Pauley submitted an Offense Report on April 22, 2021, at 10:50 a.m. after the forced hair cutting, charging Tipton with failing to obey an order to comply with escort procedures and not resist staff, which was assigned Case Number 20210165514.  (Offense Report [#108-1], at 2.)  A disciplinary hearing was held on May 13,

2021, and Tipton was found guilty of the offenses alleged.  (Hearing Record [#108-1], at 8.)
Tipton filed a Step 1 grievance on May 25, 2021, challenging the disciplinary action and alleging
an assault had occurred.  (Step 1 Grievance [#108-1], at 9.)  The Step 1 grievance was denied on
June 10, 2021.  (Investigation Worksheet [#108-1], at 11.)  Tipton filed a Step 2 grievance on
June 13, 2021, appealing the disciplinary action.  (Step 2 Grievance [#108-1], at 13.)  On July 2,
2021, the Step 2 grievance was resolved in his favor, and the disciplinary action was overturned.
(Order [#108-1], at 15–20.)

Based on this record, it is undisputed that Tipton did not exhaust his administrative
remedies as to the use-of-force incident at issue—the primary basis of his Section 1983 claims—
until after he filed this federal action.  The PLRA requires exhaustion of administrative remedies
before an action is brought in federal court, not while the action is pending.  *See* 42 U.S.C. §
1997e(a).  Tipton concedes in his response that he did not exhaust TDCJ's grievance process
prior to filing suit, but asks the Court to nonetheless excuse his failure to exhaust because
exhaustion was completed prior to service of the Complaint on Defendants.

The Fifth Circuit at one time stated, albeit in dicta, that "a non-jurisdictional exhaustion
requirement may, in certain rare instances, be excused, particularly where dismissal would be
inefficient and would not further the interests of justice or the Congressional purposes behind the
PLRA."  *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998).  In *Underwood*, as here, the
plaintiff exhausted administrative remedies after the suit was filed; thus, dismissal for failure to
exhaust would have resulted in the plaintiff refiling the lawsuit upon dismissal.  *Id.*  However, in
the same case, the Fifth Circuit also emphasized that "dismissal may serve as a deterrent to
premature filing" both as to the specific plaintiff at issue and "other potential litigants" and
ultimately held that there was no error in the district court's refusal to suspend the PLRA's

exhaustion requirement despite the inefficiency of the circumstances.  *Id.*  ("By choosing to file and pursue his suit prior to exhausting administrative remedies as required, Underwood sought relief to which he was not entitled—that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.").

Yet post-*Underwood*, the Supreme Court has repeatedly emphasized the mandatory nature of the PLRA's statutory exhaustion requirement and has rejected the idea that there can be judicially-created exceptions to exhaustion.  In *Porter v. Nussle*, the Supreme Court referred to Congress's "elimination of judicial discretion to dispense with exhaustion" in enacting the PLRA.  534 U.S. at 529.  Similarly, in *Booth v. Churner*, the Supreme Court stated that "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."  532 U.S. 731, 741 n.6 (2001).  And most clearly in *Ross v. Blake*, the Supreme Court clarified that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion," as compared to judge-made exhaustion requirements.  578 U.S. 632, 639 (2016).  In light of these clear directives from the Supreme Court, the Fifth Circuit has found that "there can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory" and that *Underwood*—insofar that it served as a basis for permitting prisoner lawsuits in the absence of pre-filing exhaustion—has been "tacitly overruled."  *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).  Therefore, district courts no longer have "discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing [a] complaint."  *Id.*  The District Court should therefore decline to excuse Tipton's failure to exhaust based on his argument that Defendants suffered no prejudice because he exhausted his administrative remedies after filing suit but before Defendants were served.

Alternatively, Tipton asks the Court to excuse his failure to exhaust his administrative remedies because the prison's administrative remedies were not truly "available." *See* 42 U.S.C. § 1997e(a) (mandating exhaustion only as to "such administrative remedies as are available"). Although the Supreme Court has rejected the creation of special non-statutory exceptions to the PLRA's exhaustion requirement, it has recognized that the PLRA "contains its own, textual exception to mandatory exhaustion" hinging on the actual availability of administrative remedies. *Ross*, 578 U.S. at 642. As recognized in *Ross*, there are three instances making administrative remedies "unavailable" under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead-end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. Second, an administrative scheme may be "so opaque that it becomes, practically speaking, incapable of use" because no ordinary prisoner can discern how to navigate it. *Id.* at 643–44. Third, when prison authorities thwart an inmate from taking advantage of the grievance process through "machination, misrepresentation, or intimidation," the administrative remedy provided by the grievance process is likewise unavailable. *Id.* at 644.

Tipton argues in his summary judgment response that the grievance records submitted by Defendants establish that, despite the fact that TDCJ offers a grievance procedure for resolution of prisoner complaints, in Tipton's case, it served no purpose other than to protect the officers against whom he complained and to discourage him from grieving. Additionally, Tipton claims that TDCJ's instructions as to the administrative grievance process are not clear, as they do not communicate that an offender must file a Step 2 grievance in order to exhaust administrative remedies or explain the consequences of a failure to do so.

Defendants submitted over 800 pages of records in support of their motion for summary judgment.  In making his arguments about the unavailability of administrative remedies, Tipton does not direct the Court to any specific records or evidence.  The undersigned notes, however, that TDCJ's Offender Orientation Handbook contains a section entitled "Grievance Procedures for Offenders," and the excerpt from the handbook attached to Defendants' motion for summary judgment outlines the two-step grievance process but does not include any notice regarding the requirement of completing both steps prior to filing a federal lawsuit.  (Grievance Procedures [#105-2], at 1–5.)  However, the entire Offender Orientation Handbook was not provided to the Court.  Ultimately, however, Tipton has not carried his summary judgment burden to establish that the administrative remedies at issue were not "available" for purposes of PLRA exhaustion.  Tipton did file both a Step 1 and Step 2 grievance regarding the use-of-force incident underlying this suit, and he did receive a favorable result—the dismissal of his disciplinary offense and restoration of 100 days of good time credit.  An administrative process which is in fact utilized by a prisoner and used successfully to obtain the relief sought cannot be "unavailable."  Tipton is not entitled to the textual exception in the PLRA recognized by the Supreme Court in *Ross* based on the unavailability of administrative remedies.

That said, the undersigned is sensitive to Tipton's frustrations that obtaining relief in both the dismissal of the disciplinary offense related to the incident on April 22, 2021, and the ultimate ability to grow his hair long on the basis of his religion required the filing of numerous grievances that remained unaddressed by prison officials.  The undersigned can understand how a prisoner in Tipton's position would feel that any grievance related to TDCJ's grooming policy and Tipton's long hair was likely to fall on deaf ears and be more or less futile.  However, Tipton has obtained some of the relief he was seeking through this lawsuit—the ability to grow his hair

long in accordance with his religious beliefs.  His failure to fully exhaust TDCJ's administrative procedures prior to filing this suit, however, bars him from pursuing the monetary damages he also seeks.

Defendants are therefore entitled to summary judgment on Tipton's Section 1983 claims. Because Tipton's Section 1983 claims are barred by the PLRA's exhaustion requirement, the undersigned need not and has not addressed Defendants' alternative argument that they are entitled to summary judgment based on their qualified immunity from suit.

### IV.  Conclusion and Recommendation

**IT IS THEREFORE ORDERED** that Defendants Rayford, Pauley, Trice, Orozco, Peralez, Hassler, and Sala's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (c) [#100] and Defendants Manuel and Osbaldo Puente's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) [#101] are **DISMISSED AS SUPERSEDED** by Defendants' motion for summary judgment.

Having considered Defendants' motions, the responses and replies, the record, and governing law, the undersigned also **recommends** that Defendants' Motion for Summary Judgment [#105] be **GRANTED**.

### V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file

the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 16th day of January, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE